John Ross EWING, Appellant

v.

The STATE of Texas, State.

No. 2–03–424–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 3, 2005.

Don Davidson, Bedford, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty., Chief of Appellate Division, Anne Swenson, David M. Curl, Mitch Poe, Alana K. Minton, Fort Worth, for Appellee.

PANEL F: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

Appellant John Ross Ewing, a former Haltom City police officer, was convicted by a jury of three counts of sexually assaulting a sixteen-year-old boy whom he had met through the Haltom City Police Department's Explorers program, in which Haltom City police officers serve as advisors to high school students interested in learning about law enforcement. On appeal, Appellant contends that the trial court erred by foreclosing voir dire questioning regarding Appellant's homosexuality, by admitting evidence of extraneous acts without proper notice, by overruling objections to the State's sentencing argument, and by imposing consecutive, rather than concurrent, suspended sentences on the second and third counts. We will reverse and remand only the portion of the judgment imposing consecutive suspended sentences; in all other respects, we will affirm.

## I. TRIAL COURT'S LIMITATION OF VOIR DIRE

During voir dire, Appellant's attorney attempted to question a prospective juror on his views regarding Appellant's homosexuality in the following exchange:

[Appellant's Attorney]: Would you be more apt, even if the State put evidence up here that was almost there, but not quite, would you be less inclined to give [Appellant] the benefit of the doubt because [of] his lifestyle?

[The State]: Your Honor, I'm going to object. He is attempting to bind the jury and—

THE COURT: Sustained.

[Appellant's Attorney]: Would you be, in any case involving an alleged homosexual or homosexual, would you be more inclined or less inclined to believe they were guilty of an offense?

[The State]: Objection, binding, Your Honor.

THE COURT: Sustained.

■ The trial court has broad discretion over the process of selecting a jury, and it abuses its discretion only when it prohibits a question about a proper area of inquiry. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App.2002); *Harris v. State*, 122 S.W.3d 871, 878 (Tex.App.-Fort Worth 2003, pet. ref'd). Generally, a question is improper if it attempts to commit a prospective juror to a particular verdict based on particular facts. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex.Crim.App.2001). Such "commitment questions" ask prospective jurors to resolve, or to refrain from resolving, an issue in the case a certain way after learning a particular fact. *Id.* at 179–80.[1]

■ Not all commitment questions are improper, however. A commitment question is permissible when it is designed to elicit an answer that could give rise to a challenge for cause. *Id.* at 182. For example, when the law requires a certain type of commitment from jurors, the attorney may pose a commitment question that asks the prospective jurors whether they can follow the law in that regard. *Id.* at 181. Appellant contends that his questions were proper because they asked the prospective juror whether he could follow the

law regarding the burden of proof in the case of a homosexual defendant.

■ As the trial judge explained to the venire panel, the law requires the State to prove beyond a reasonable doubt that a defendant is guilty of an offense. *See Jones v. U.S.*, 526 U.S. 227, 232, 119 S.Ct. 1215, 1219, 143 L.Ed.2d 311 (1999); *Weaver v. State*, 87 S.W.3d 557, 560 (Tex.Crim. App.2002), *cert. denied*, 538 U.S. 911, 123 S.Ct. 1491, 155 L.Ed.2d 234 (2003); TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.2004–05). However, Appellant's questions were not calculated to elicit a commitment from the juror regarding following the law on the burden of proof. A question that gets a juror to admit that he or she may be "less inclined" to lean the defendant's way is not the same as a question that gets the juror to admit that he or she would not require the State to prove its case beyond a reasonable doubt. Instead, it seeks imprecise, vague information that reveals nothing about the juror's views on the burden-of-proof issue in the case. Accordingly, because "[t]he trial court is within its discretion to prevent fishing expeditions during voir dire that may extend jury selection *ad infinitum,*" *Barajas*, 93 S.W.3d at 42, the trial court did not abuse its discretion in refusing Appellant's commitment questions that would not have revealed any useful information in formulating a challenge for cause. *See id; Standefer*, 59 S.W.3d at 183. We overrule Appellant's first issue.

## II. TRIAL COURT'S ADMISSION OF EXTRANEOUS BAD ACTS

■ Appellant next complains that the trial court erred in allowing a State's wit-

---

1. Because the State does not appear to dispute Appellant's claim that these voir dire questions were commitment questions, we assume, without deciding, that the questions requested the juror to decide an issue in the case a certain way and therefore qualified as

"commitment questions." *Cf. id.* (stating that a question asking the jurors if they could be "fair and impartial" if the victim were a nun was not a commitment question because it did not ask the prospective jurors to resolve or refrain from resolving any issue).

ness to testify about extraneous bad acts committed by Appellant because the State provided insufficient notice of its intent to offer this testimony as required by article 37.07 of the Code of Criminal Procedure. This notice requirement is triggered upon a request to the State by the defendant:

> On timely request of the defendant, notice of intent to introduce evidence under this article [of extraneous crimes or bad acts] shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.[2] ... The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp.2004–05).

Appellant concedes that the record does not contain the request to the State required by article 37.07. Despite the absence of a request, the State filed a notice of intent to introduce extraneous-offense evidence and supplemented this notice on the day of trial. Appellant argues that the State's notice and supplement show either that he did properly request notice from the State, even though the notice is not in the record, or that the State interpreted his discovery motion as including such a request.

First, Appellant's speculation about a possible notice outside the record cannot support his issue on appeal. *See Burks v. State,* 904 S.W.2d 208, 209–10 (Tex.App.-Fort Worth 1995, no pet.) ("It is well-settled that the appellant bears the burden of providing the appellate court with a record sufficient to show error requiring

reversal."). Second, Appellant's discovery motion was insufficient to trigger the State's duty to provide notice. When the State called the witness to testify, Appellant objected and directed the trial court to a request in his motion for discovery asking the court to order the State to produce "[a]ll evidence in possession of, or within the knowledge of, the state or any of its agencies, including impeachment evidence, which is favorable to Defendant and material either to guilt or to punishment."

Initially, we note that this request does not ask for extraneous-offense evidence because such evidence is not "favorable to" Appellant. Furthermore, this motion was addressed to the trial court, not to the State, and Appellant did not secure a ruling from the court on this motion. Therefore, regardless of any interpretation the State may have assigned to Appellant's discovery motion, the motion did not comply with the requirements of article 37.07. As a result, the State had no duty to provide notice of its intent to present evidence of extraneous crimes or bad acts. *See Mitchell v. State,* 982 S.W.2d 425, 427 (Tex.Crim.App.1998) (holding defendant's motion requesting the court to order the State to provide notice of intent insufficient to trigger notice requirement of article 37.07); Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (specifying that the defendant's request must be made to "the attorney representing the state"); *see also Simpson v. State,* 991 S.W.2d 798, 801 (Tex.Crim.App.1998) (holding defendant's motion requesting the court to order the State to provide notice of intent to offer evidence of other crimes, wrongs, or acts insufficient to trigger notice requirement

---

**2.** Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for purposes other than proving a person's character "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." Tex.R. Evid. 404(b).

of Rule 404(b)). We overrule Appellant's second issue.

## III. TRIAL COURT'S OVERRULING OBJECTIONS TO STATE'S JURY ARGUMENT

In his third and fourth issues, Appellant challenges remarks made by the State during its arguments to the jury in the sentencing phase of trial. Appellant claims that these statements were unsupported by the evidence and were an attempt to present new, harmful facts to the jury. Upon reviewing the record, we conclude that even if the trial court erred in overruling Appellant's objection to these statements, any error was harmless.

 Appellant first complains of the State's comment that "Paul Bents [the victim] was not a single incident. It was not something that he just ended up as a victim of circumstance. This man is a predator. He sought out a profession that enabled him to gain the trust of children and abuse them." Proper jury argument includes reasonable deductions drawn from the evidence presented at trial. *Jackson v. State,* 17 S.W.3d 664, 673 (Tex.Crim. App.2000). While there was evidence that police officers hold a position of authority and trust in the community and with teenagers, that the tickets Appellant issued went predominantly to males between the ages of sixteen and twenty-five, and that Appellant made sexual advances toward other teenagers besides the victim in this case, there was no evidence that Appellant had inappropriate interest in or contact with children before he became a police officer or that Appellant's motivation at

the time he became a police officer was to prey on children.[3] Accordingly, the State's argument was not a reasonable deduction from the evidence and was not proper.

 However, the trial court's erroneous overruling of Appellant's objection to this argument is not reversible error unless it affected Appellant's substantial rights. TEX.R.APP. P. 44.2(b); *Martinez v. State,* 17 S.W.3d 677, 692–93 (Tex.Crim. App.2000); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). In determining whether Appellant's substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct. *Martinez,* 17 S.W.3d at 692–93; *Mosley,* 983 S.W.2d at 259.

While there were no measures taken to cure this remark, the degree of the State's misconduct was mild in this instance. Appellant contends that this remark gave the jury the impression that the State was in possession of additional facts that convinced the State's attorney that Appellant was a "conniving sexual predator and a devious liar." However, the jury was instructed to consider only the evidence before it; the jury heard all the evidence presented at trial and was therefore in the position to recognize that no testimony was presented that supported the State's argument. Moreover, there was evidence presented in the punishment phase of trial that Appellant sexually assaulted another

---

**3.** The State also argues that the statement, "He sought out a profession that enabled him to gain the trust of children and abuse them," is proper because it is literally true-Appellant did seek to be a police officer, and being a police officer placed him in a position of trust from which he had the opportunity to abuse children. Read in context, however, this statement was clearly part of the State's overall argument that Appellant was a "predator" whose actions were planned and calculated to abuse children.

teenage boy in addition to the victim and that he sought to have sex with two other teenagers. Given the strength of the evidence supporting Appellant's sentence, we hold that any error associated with the State's comment on Appellant's motivation for becoming a police officer was harmless.

■■■■ Next, Appellant complains of the State's comment that he was "a collector of boys' IDs" and kept "a box of boys' driver's licenses in his apartment, or in his bag, wherever he liked to keep it." Appellant contends that this statement directly contradicts his unrebutted testimony that he "did have a box full of driver's licenses, but had a variety of people in there. It also had alien cards, fake IDs, female driver's licenses." However, counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *See Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App. 1996).

■■■■ Appellant admitted that he had a "bad habit" of forgetting to return driver's licenses to their owners after ticketing them, and he also admitted that Haltom High School was his "fishing hole" for writing tickets to high school students and that the recipients of his citations were predominantly males aged sixteen to twenty-five years old. Accordingly, it was a reasonable deduction from the evidence that because Appellant issued the majority of his citations to young males, then the majority of the IDs he kept after issuing the citations would be those of young males. Therefore, the trial court did not err in overruling Appellant's objection to this portion of the State's closing argu-

ment. Furthermore, for the reasons mentioned above, any possible error is outweighed by the strength of the evidence in favor of the punishment assessed. We overrule Appellant's third and fourth issues.

## V. TRIAL COURT'S CUMULATION OF SUSPENDED SENTENCES

■■■ Finally, Appellant argues in his fifth issue that the trial court erred in imposing cumulative sentences. The jury returned a guilty verdict on all three charged counts of sexual assault of a child, assessed punishment at 20 years' confinement on the first count and 10 years' confinement for each of the second and third counts, and recommended suspension of the sentences for the second and third counts. The trial court's judgment ordered the suspended sentences for the second and third counts to run consecutively, effectively imposing suspended sentences totaling twenty years.

Appellant asserts that the trial court's judgment violates article 42.08 of the Code of Criminal Procedure, which provides that when the court imposes consecutive sentences, "the cumulative total of suspended sentences in felony cases shall not exceed 10 years." TEX.CODE CRIM. PROC. ANN. art. 42.08(a). The State concedes that the cumulative sentence violates article 42.08, but it argues that the judgment is nevertheless allowed by section 3.03 of the Penal Code, which authorizes the imposition of consecutive sentences for sexual assaults against juveniles but imposes no limitation on the cumulative years of suspended sentences. TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (Vernon 2003).[4]

---

4. The general rule imposed by section 3.03(a) is that sentences for offenses arising out of the same criminal episode prosecuted in a single criminal action must run concurrently. Section 3.03(b) lists offenses that are exceptions

to this general rule, including sexual assaults committed against a victim younger than seventeen years of age. If one of these exceptions applies, the court may impose sentences

■ However, these two statutes cannot be read independently of each other.[5] Instead, article 42.08 of the Code of Criminal Procedure establishes the trial court's general authority to order consecutive sentences, and the overlay of section 3.03 of the Penal Code limits this authority when multiple offenses arising out of the same criminal episode are tried in a single criminal action (unless an exception in section 3.03(b) applies). *See Ex parte Sims,* 868 S.W.2d 803, 804 (Tex.Crim.App.1993), *overruled on other grounds by Ex Parte McJunkins,* 954 S.W.2d 39, 41 (Tex.Crim. App.1997); *LaPorte v. State,* 840 S.W.2d 412, 415 (Tex.Crim.App.1992); Tex.Code Crim. Proc. Ann. art. 42.08; Tex. Penal Code Ann. § 3.03. Accordingly, the trial court had no authority to order consecutive suspended sentences totaling twenty years because article 42.08 of the Code of Criminal Procedure prohibits imposing consecutive suspended sentences when the cumulative term of the suspended sentences exceeds ten years. *See* Tex.Code Crim. Proc. Ann. art. 42.08(a). We sustain Appellant's fifth issue.

## VI. Conclusion

Having sustained Appellant's fifth issue only, we are urged by the State to reform the judgment and order the suspended sentences to run concurrently following Appellant's completion of the twenty-year sentence from the first count. However, the trial court has discretion either to order the sentences on the second and third counts to begin when the twenty-year sentence has ceased to operate or to order the sentences all to run concurrently. *See* Tex.Code Crim. Proc. Ann. art. 42.08(a).

Accordingly, we reverse only that portion of the trial court's judgment ordering the ten-year suspended sentences on counts two and three to be served consecutively and remand for rendition of judgment in compliance with article 42.08 of the Code of Criminal Procedure. In all other respects, we affirm the trial court's judgment.

---

to run concurrently *or* consecutively. Tex. Penal Code Ann. § 3.03.

**5.** As a rule of statutory interpretation, when two statutes cover the same general subject matter or share a similar purpose or object,

we construe the statutes so as to harmonize any perceived conflict and give effect to all the provisions of each statute, if possible. *See Cheney v. State,* 755 S.W.2d 123, 126–27 (Tex. Crim.App.1988).